**Linda K. SIMMONS, Plaintiff–Appellee,**

v.

**James J. SIMMONS,
Defendant–Appellant.**

**No. 85CA0995.**

Colorado Court of Appeals,
Div. III.

Dec. 8, 1988.

Rehearing Denied Jan. 26, 1989.

Certiorari Denied May 15, 1989.

Edwards, Terrill & Mygatt, P.C., Marianne Wesson, Ann B. Mygatt, Boulder, for plaintiff-appellee.

Horowitz & Associates, P.C., Jay S. Horowitz, Joseph B. Dischinger, Denver, for defendant-appellant.

JONES, Judge.

Defendant, James J. Simmons, former husband of plaintiff, Linda K. Simmons, appeals the judgment entered on a jury verdict awarding plaintiff $15,000 in compensatory damages and $100,000 in punitive damages against the defendant for assault and battery, intentional infliction of emotional distress, and outrageous conduct. Because of prejudicial error to defendant in the conduct of the trial, we reverse.

The parties were married in 1976, and in June 1982, a petition for dissolution of marriage was filed by defendant, with the hearing on final dissolution orders set for February 1983.

Before the hearing date, plaintiff filed the civil complaint in this matter. In it, she alleged that, one year earlier, defendant had assaulted her by throwing coffee on her; that on May 10, 1982, defendant without provocation, intentionally kicked, slapped, and hit her, and tore her ear; and finally, that during the last years of the marriage defendant intentionally caused plaintiff to suffer emotional distress by his outrageous conduct.

During 1983, the two separate cases between these parties remained pending before two separate trial courts. In this case, defendant filed a motion to dismiss on grounds that plaintiff's claims should be pursued in the pending dissolution proceedings. That motion was denied. On April 11, 1983, the trial court presiding over the dissolution proceeding granted the motion of James (defendant here) for partial summary judgment, upholding the parties' antenuptial agreement. Later, a decree of dissolution was entered, allocating the parties' property in accordance with the agreement. On March 21, 1985, the trial court in this case entered judgment against defendant. From that judgment, defendant appeals.

I.

Defendant first contends that since the parties to this action were married, the trial

court erred when it allowed an independent civil action alleging the tort of intentional infliction of emotional distress. We disagree.

■ In Colorado a wife may sue her husband for damages for personal injuries caused by the conduct of the husband. *See Rains v. Rains*, 97 Colo. 19, 46 P.2d 740 (1935). Thus, plaintiff's marriage to defendant does not preclude her from maintaining the action for damages against him.

## II.

Defendant next contends that plaintiff should have been required to assert her present claims in the prior dissolution proceedings because (1) they are compulsory counterclaims under C.R.C.P. 13; and (2) the Uniform Marriage and Dissolution Act requires the resolution of all disputes arising out of a marriage to be resolved in a single proceeding. We disagree.

No Colorado appellate decision has squarely addressed this precise issue. Although the few cases decided in other jurisdictions reveal no clear majority position, they do reveal that consideration of judicial economy and efficiency has been central to their results.

In *Tevis v. Tevis*, 79 N.J. 422, 400 A.2d 1189 (1979), the New Jersey Supreme Court held that a suit in tort by the plaintiff ex-spouse was barred, stating that:

"Since the *circumstances* of the marital tort and its potential for money damages were relevant in the matrimonial proceedings, the claim should not have been held in abeyance; it should, under the 'single controversy' doctrine, have been presented in conjunction with that action as part of the overall dispute between the parties in order to lay at rest all their legal differences in one proceeding and avoid the *prolongation and fractionalization of litigation.*" (emphasis added)

Conversely, the Supreme Court of Utah has held that actionable torts between married persons should not be litigated in divorce proceedings. *Walther v. Walther*, 709 P.2d 387 (Utah 1985); *Lord v. Shaw*,

665 P.2d 1288 (Utah 1983). In both these cases, the court reasoned that:

"[D]ivorce actions will become unduly complicated in their trial and disposition if torts can be or must be litigated in the same action. A divorce action is *highly equitable in nature*, whereas the trial of a tort claim is at law and may well involve, as in this case, a request for trial by jury. The administration of justice will be better served by keeping the two proceedings separate." (emphasis added)

The Supreme Court of Arizona reached the same conclusion, basing its holding on "the peculiar and special nature of a divorce action." *Windauer v. O'Connor*, 107 Ariz. 267, 485 P.2d 1157 (1971).

We note that in Utah, as in New Jersey, divorce is grounded in fault. *See* Utah Code Ann. § 30–3–1 (1987–88); N.J.Rev. Stat. § 34–2 (1971). Nevertheless, the Utah Supreme Court focused on the distinctions between dissolutions and matters at law, rather than the relevancy of potential tort money damages in dissolution proceedings. The court's high regard for the equitable nature of dissolutions—in a statutory fault context—is highly persuasive.

In a state governed by the Uniform Dissolution of Marriage Act, such as Colorado, moreover, the reasoning in *Tevis* is inapposite. Considerations of fault or misconduct would be appropriate only in the context of child custody proceedings and, even then, only when directly bearing on the issue of the best interests of the child the custody of whom is at issue.

■ Accordingly, we adopt the reasoning of the Utah and Arizona courts, and hold that the efficient administration of dissolution cases requires their insulation from the peculiarities of matters at law. The joinder of marriage dissolution actions with claims sounding in tort or, for instance, contract would require our trial courts to address many extraneous issues, including trial by jury, *see Lord v. Shaw, supra*, and the difference between the "amicable settlement of disputes that have arisen between parties to a marriage," and the adversarial nature of other types of civil cases. *See* § 14–10–102(2)(a), C.R.S.

(1987 Repl.Vol. 6B). Moreover, such would create tension between the acceptance of contingent fees in tort claims and our strong and longstanding public policy against contingent fees in domestic cases. We conclude that sound policy considerations preclude either permissive or compulsory joinder of interspousal tort claims, or non-related contract claims, with dissolution of marriage proceedings.

### III.

■ Defendant further contends that he was denied a fair trial because of extreme prejudice to him by the conduct of plaintiff's counsel in introducing irrelevant and inflammatory evidence, and in her improper arguments to the jury. We disagree that the conduct of plaintiff's counsel constitutes prejudicial error. However, because of a significant intervening factor, we remand this cause for new trial.

The trial herein was conducted under a mistake on the part of the parties, counsel, and the trial court as to the validity of the parties' antenuptial agreement. That agreement, if valid, would preclude any substantial award of marital assets to the plaintiff in the dissolution proceeding. The trial of this action was conducted and judgment was entered after the dissolution of marriage court had determined the agreement to be valid. However, on appeal, this court subsequently reversed that ruling. In that appeal, the agreement was held to be void as against public policy, and the cause was remanded for resolution under the laws of this state regarding property settlement and maintenance. *See In re Marriage of Simmons*, (Colo.App. No. 83CA1161, Feb. 20, 1986) (not selected for official publication).

Thus, the trial here was conducted under the mistaken belief that, after the dissolution, plaintiff would receive only the minimal sum provided her by the agreement. We conclude that repeated references to the fact and effect of the agreement by counsel for both parties, and the great emphasis placed thereon by plaintiff's counsel in closing argument, affected the jury's deliberations.

We conclude that the mistake as to the validity of the antenuptial agreement was such as to cause unfair prejudice to the parties. *See Beulah Marble Co. v. Mattice*, 22 Colo. 547, 45 P. 432 (1896).

Because of this determination, we need not consider defendant's remaining contentions.

Hence, although there was no error in plaintiff's pursuing her claims against defendant in this independent action, the judgment is reversed, and the cause is remanded for a new trial consistent with the views expressed in this opinion.

STERNBERG, J., concurs.

VAN CISE, J., concurs in part and dissents in part.

VAN CISE, Judge, concurring in part and dissenting in part.

I disagree with Part II of the majority opinion. Therefore, although I concur in the reversal of the judgment, I would remand with directions to dismiss the complaint.

I agree with defendant husband's contention that plaintiff wife should have asserted her tort claims as counterclaims when she filed her answer in the dissolution action. Since she did not so plead, the instant case based on these claims should have been dismissed under the doctrine of res judicata.

The district court in the dissolution action is a trial court of general jurisdiction. Colo. Const. art. VI, § 9. Section 14–10–105(1), C.R.S. (1987 Repl.Vol. 6B) of the Uniform Dissolution of Marriage Act (the Act) states that: "The Colorado Rules of Civil Procedure apply to all proceedings under this article, except as otherwise specifically provided in this article." There is no language in the Act prohibiting joinder of other claims with proceedings under the Act. Therefore, C.R.C.P. 13(a) pertaining to compulsory counterclaims is applicable as in any other type of civil action.

The complained of acts arose out of the failed marital relationship and, therefore, came under the category of compulsory counterclaims as defined in C.R.C.P. 13(a). Not having been raised in the dissolution proceeding, they are barred. *See Visual Factor, Inc., v. Sinclair*, 166 Colo. 22, 441

P.2d 643 (1968); *McCabe v. United Bank,* 657 P.2d 976 (Colo.App.1982). This is so even though the evidence needed to establish these tort claims is quite different from that pertaining to the dissolution action, *see Visual Factor, Inc., supra.,* as here, there is a logical relationship between the claim for dissolution and the claims for torts committed during the marriage. *See McCabe, supra.*

Also, § 106(1)(b) of the Act directs the court to "consider, approve, or make provision for ... the disposition of property" in conjunction with the entry of a decree of dissolution. These tort claims are choses in action and, therefore, are property to be disposed of in the dissolution proceeding. And, since one of the underlying purposes of the Act, as stated in § 102(2)(a), is "[t]o promote the amicable settlement of disputes that have arisen between parties to a marriage," the dissolution court is the proper court to decide all claims and disputes that may exist between the parties. *See Tevis v. Tevis,* 79 N.J. 422, 400 A.2d 1189 (1979).

. The judgment should be reversed and the complaint should be dismissed.